UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**SUMMONS ISSUE**

-----------------------------------------------------------------x

JUSTIN THOMAS,

        Plaintiff,

   -v-

THE CITY OF NEW YORK, New York City Police
Department ("NYPD") Sergeant ("Sgt.") VIET CAO
(Shield No. 1925), Officer ("P.O.") JOHN DOE (the
name John Doe being fictitious, as the true name and
shield number is not presently known), in their
individual capacities,

        Defendants.

-----------------------------------------------------------------x

**COMPLAINT
AND DEMAND
FOR A JURY TRIAL**

Index No. 13-



**JOHNSON**

**BLOOM MTT**

   Plaintiff JUSTIN THOMAS, through his attorney DAVID B. RANKIN of Rankin &

Taylor, PLLC, as and for his complaint, does hereby state and allege:

### PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and

  Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

  Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. On April 19, 2013 at approximately 11:00 a.m., JUSTIN THOMAS ("Mr. THOMAS"), then

  a senior at the School for the Visual Arts, was filming the exterior of the New York City

  Police Department's ("NYPD") 72nd Precinct Station House in Kings County and was

  unlawfully arrested for filming the exterior of the police station.

3. Mr. THOMAS' rights were violated when officers of the NYPD officers unconstitutionally

  and without any legal basis arrested him for making his film. By reason of defendants'

1

actions, including their unreasonable and unlawful seizure of his person, plaintiff was deprived of his constitutional rights.

4. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343(a) (3-4). This action is brought pursuant to 42 U.S.C. §§1983 and 1988 for violations of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that Mr. THOMAS' claim arose in the Eastern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

## PARTIES

7. Plaintiff Mr. THOMAS was at all times relevant to this action a resident of the County of Kings in the State of New York.

8. Defendant THE CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9. NYPD SERGEANT VIET CAO (Shield No. 1925) ("Sgt. CAO") and Officer ("P.O.") JOHN DOE (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The individual defendants are being sued herein in their individual capacities under federal law.

11. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

12. The true name and shield number of defendant P.O. JOHN DOE is not currently known to the plaintiff. However, he is an employee or agent of the NYPD. Accordingly, he is entitled to representation in this action by the New York City Law Department ("Law Department") upon request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. THOMAS intends to name said officer as a defendant in an amended pleading once the true name and shield number of said defendant become known to plaintiff and (b) that the Law Department should immediately begin preparing his defense in this action.

## STATEMENT OF FACTS

13. Mr. THOMAS was maliciously injured by the individual defendants when they arrested him outside the NYPD's 72nd Precinct stationhouse at 830 4th Avenue in Kings County of the State of New York on the morning of April 19, 2013, at approximately 11:00 a.m.

14. Mr. THOMAS was filming the exterior of the 72nd Precinct for b-roll footage for his senior class project video project when he was approached by defendant Sgt. CAO.

3

15. Sgt. CAO approached Mr. THOMAS and demanded that he stop filming the exterior of the precinct.

16. A friend of Mr. THOMAS stood beside him and filmed the conversation between Mr. THOMAS and defendant Sgt. CAO.

17. Defendant Sgt. CAO saw this friend was filming and also demanded the friend turn off the camera.

18. The friend continued to film and repeatedly stated that he was not interfering with an arrest, during which time Mr. THOMAS stood by.

19. Immediately thereafter, defendant Sgt. CAO grabbed Mr. THOMAS' upper arm and jerked him forward, stating that he was under arrest.

20. Defendant Sgt. CAO called for assistance through his handheld transceiver and held Mr. THOMAS by the upper arm for approximately one to two minutes until P.O. DOE came into the parking lot to assist in the arrest.

21. Mr. THOMAS did not resist arrest.

22. JOHN DOE grabbed and shut off the video camera, ending the recording. JOHN DOE removed a memory card from the camera in an attempt to destroy the recording.

23. Unbeknownst to JOHN DOE, the camera had two cards recording and JOHN DOE did not take the second card.

24. Mr. THOMAS remained detained in the parking lot until he was rear-cuffed, searched and led into the precinct where he remained until released with a desk appearance ticket.

25. As a result of his arrest, Mr. THOMAS was prevented from filming the stationhouse in violation of his First Amendment rights.

4

26. When Mr. Thomas went to court as directed by the desk appearance ticket, it became clear that no charges were filed against Mr. THOMAS and he left the courthouse.

27. Mr. THOMAS spent approximately two (2) hours in the defendants' custody as a result of his arrest.

**FIRST CLAIM**
**RETALIATORY ARREST**
**FIRST AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983**
**(Against Sgt. CAO)**

28. Mr. THOMAS incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

29. By the actions described above, defendant Sgt. CAO arrested plaintiff in direct retaliation for both the content and viewpoint of plaintiff's speech, and he did so without having probable cause to arrest plaintiff for any offense. The acts and conduct of the defendant was the direct and proximate cause of injury and damage to plaintiff and violated his rights under the First and Fourteenth Amendments, as secured through 42 U.S.C. § 1983.

30. As a result of the foregoing, Mr. THOMAS was deprived of his liberty, was forced to halt his speech, suffered psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**SECOND CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
**(Against Sgt. CAO and JOHN DOE)**

31. Mr. THOMAS incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. Defendant Sgt. CAO, under color of state law, subjected Mr. THOMAS to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by

5

the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person, including the excessive use of force; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment; (d) freedom from abuse of process; and (e) the enjoyment of equal protection, privileges, and immunities under the laws.

33. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the NYPD or other law enforcement agency employing unjustified and excessive force against a civilian.

34. Defendant JOHN DOE's violation of Mr. THOMAS' constitutional rights by failing to intervene in defendant Sgt. CAO's clearly unconstitutional retaliatory arrest and seizure against plaintiff resulted in the injuries and damages set forth above.

35. Defendants' deprivation of Mr. THOMAS's constitutional rights resulted in the injuries and damages set forth above.

## THIRD CLAIM
### *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983

36. Plaintiff Mr. THOMAS incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

37. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

6

38. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

39. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

40. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, arresting individuals in retaliation for filming government buildings or filming the conduct of government actors, particularly police officers.

41. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

   a. Bandele v. The City of New York, 07 CV 3339 (MGC)(S.D.N.Y.) The plaintiffs -- Lumumba Bandele, Djibril Toure and David Floyd -- say they were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757 C0A9619C8B63.

   b. Carneval v. The City of New York, 08 CV 9993 (DAB)(AJP)(S.D.N.Y.) A Manhattan photographer was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010);

7

http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

c.   Thirteen news organizations sued the NYPD for its treatment of journalists covering the Occupy Wall Street demonstrations, specifically, the arrests, detention and mistreatment of photographers and reporters covering the demonstrations. In addition, 10 press clubs, unions and other groups called for an investigation and formed a coalition to monitor police behavior going forward. Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times (Nov. 21, 2011), http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

d.   Photographer Robert Stolarik, 43, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and with resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. *Times Photographer is Arrested on Assignment*, The New York Times (Aug. 5, 2012), http://www.nytimes.com/2012/08/06/nyregion/robert-stolarik-times-photographer-is-arrested-while-on-assignment-in-the-bronx.html?_r=1.

e.   Five photojournalists reporting on Occupy Wall Street protesters were arrested in course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

f.   A Brooklyn photographer was arrested and his pictures destroyed by NYPD officers after he filmed them stopping and questioning teenagers in Flatbush, Brooklyn. The National Press Photographers Association announced its interest in filing against the NYPD for the arrest. Sandy Eller, *Charedi Photographer Claims Handcuffed by NYPD After Videotaping Flatbush Police Stop*, Vosiznias, (Jan. 20, 2013), http://www.vosiznias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

g. Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez, 26, and Matthew Swaye, 35, said they were returning from a Bronx mall at about 10:30 p.m. Thursday when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming. Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

h. On June 20, 2013, NYPD officers arrested a photographer taking photographs of a Bushwick police station when he refused to tell the officers why he was taking the photographs. Shawn Randall Thomas was given two summonses for disorderly conduct. He has filed a complaint against officers alleging abuse and corruption. Meredith Hoffman, *Photographer Arrest Taking Pictures of Police Station House*, DNA Info (June 20, 2013), http://www.dnainfo.com/new-york/20130620/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick

i. NYPD officers arrested a Bronx teenager after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

42. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the CITY, including, without limitation, Commissioner Raymond Kelly.

43. All of the foregoing acts by the individual defendants deprived plaintiff Mr. THOMAS of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraphs "29" and "32" above.

44. The CITY knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

45. The CITY is directly liable and responsible for the acts of the individual defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

46. Despite knowledge of such unlawful _de facto_ policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner Raymond Kelly, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

47. The aforementioned CITY policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the individual defendants felt empowered to conduct a retaliatory arrest and seizure.

48. Mr. THOMAS' injuries were a direct and proximate result of the CITY and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

## **JURY DEMAND**

49. Plaintiff Mr. THOMAS demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, Mr. THOMAS demands judgment against the defendants individually and jointly and prays for relief as follows:

a.   That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.   That he be awarded punitive damages against the individual defendants; and

c.   That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.   For such other further and different relief as to the Court may seem just and proper.

Dated:      New York, New York
            November 6, 2013

Respectfully submitted,

By:

David B. Rankin
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507

11